UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,            :
                                    :
           Plaintiff,             :
                                      :
vs.                                :  Case No. 2:19-cv-02139
                                      :
BVM MERRIAM LLC, a Kansas limited  :
liability company               :
                                    :
           Defendant.         :
_____/:

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, BVM MERRIAM LLC, a Kansas limited liability company, (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.    Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2.    Defendant BVM MERRIAM LLC's property, the Quality Inn, is located at 6401 E. Frontage Road, Merriam, Kansas 66202, in Johnson County ("Quality Inn").

3.    Venue is proper in the District of Kansas, Kansas City Division because the situs of the property lies in this judicial district.  The Defendant's property is located in and does business within this judicial district.

4.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation, the Quality Inn, as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Defendants are responsible for complying with the obligations of the ADA.

7.      The place of public accommodation that the Defendant BVM MERRIAM LLC owns, operates, leases or leases to is the Quality Inn.

8.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

9.      Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

10.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Quality Inn which forms the basis of this lawsuit on July 13, 2018 (check in) and July 14, 2018 (checkout), and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to get to the heavy equipment auction and dealerships, and his uncle and cousin he visits in the Kansas City area.  He also visited the Kansas City area in March 2018, and February 2019, and he has plans to return to the Kansas City area on March 18 and 19, 2019 and later in the spring of 2019.

11.    The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Quality Inn.

12.    For the reasons set forth in paragraphs 9, 10, 11 and 22, Mr. Nekouee plans to return to the Quality Inn, but he is deterred from visiting it again as in February 2019 and this March 2019 and spring until the barriers to access are removed.

13.    The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the restrooms in the Quality Inn, and have impaired his access to the goods and services at the Quality Inn.

14.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

15.    The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

16.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

17.    On his visit to the Quality Inn, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

18.    The Plaintiff encountered barriers to access in the restroom in the lobby and in the accessible guest restroom, room 124.

19.     The Plaintiff is deterred from visiting the Quality Inn even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

20.     The Plaintiff is deterred from visiting the places of public accommodation in the Quality Inn, even though the inn is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City area because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), guest room, restrooms, breakfast area,   and pool area until the property is made accessible to him in a wheelchair.

21.      Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 25 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

22.     Fred Nekouee desires to visit the Quality Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

23.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

24.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26,

1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

25.     Preliminary inspections of the Quality Inn have shown that violations exist.   The violations that Fred Nekouee personally encountered or observed on his visit to the Quality Inn include, but are not limited to:

**PARKING AREA**

a.   (i) In the parking lot, the two parking spaces for disabled patrons on the side of the hotel shown in the photograph below do not have the signage and international symbol of accessibility.   (ii) This lack of signage and international symbol of accessibility for these parking spaces is in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1. (iii) Due to this lack of signage, the Plaintiff had difficulty finding an accessible parking space, and the lack of signage deters him from visiting Quality Inn.   (iv) The action required to provide signage is easily accomplishable and able to be carried out without much difficulty or expense.



b. (i) In the parking lot, the parking space for disabled patrons shown in the photograph in subparagraph (a) above to the right of the access aisle has a running slope as steep as about 1:14.7 (6.8%) and steeper than a slope of 1:48 (2%). (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4 (iii) In his wheelchair, the Plaintiff encountered this steep slope, and it made his wheelchair unstable. (iv) The action required to level this slope in this parking accessible parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c. (i) In the parking lot, the parking space for disabled patrons shown in the photograph in subparagraph (a) above to the left of the access aisle has a running slope as steep as about 1:15.9 (6.3%) and steeper than a slope of 1:48 (2%) and a cross slope in the front section of this parking space nearest the sidewalk that is steeper than 1:48 (2%). (ii) This running slope and cross slope are steeper than the maximum allowed slope of 1:48

(2%), in violation of Federal Law 2010, ADAAG § 502.4   (iii) In his wheelchair, the Plaintiff encountered these steep running and cross slopes, and they made his wheelchair unstable.   (iv) The action required to level these slopes in this accessible parking space is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the parking space for disabled patrons in front of the hotel has a running slope that is steeper than 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this steep slope while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to level this slope in this accessible parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) In the parking lot, the parking space for disabled patrons in front of the hotel has a running slope and a cross slope that are steeper than 1:48 (2%).   (ii) This running slope and cross slope are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered these steep slopes in in his wheelchair, and it made it difficult for him to unload from and load back into his vehicle.   (iv) The action required to level these slopes in this accessible parking space is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) In the parking lot, the running slope of the back section of the access aisle shown in the photograph in subparagraph (a) above has a running slope that is steeper than 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this steep slope while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action

required to level this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The cross slope of the walking surface from the accessible parking spaces to the hotel lobby is steeper than 1:48 (2%).   (ii) This cross slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.   (iii) The Plaintiff encountered this steep cross slope while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to make this walking surface level is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The cross slope of the walking surface near the lobby entrance door is steeper than 1:48 (2%).   (ii) This cross slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3   (iii) The Plaintiff encountered this cross slope near this entrance door while moving in his wheelchair, and it made his wheelchair unstable.   Due to this cross slope, he required assistance to enter the hotel. (iv) The action required to reduce this cross slope is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The slope of the accessibility curb ramp flares at the side entrance to the hotel is steeper than 1:10 (10%).   (ii) The slope of these curb ramp flares are steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff observed these steep curb ramp flares and avoided them to protect his safety while moving in his wheelchair.   (iv) The action required to reduce the slope of these curb ramp flares is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The slope of the surface within the entrance door required maneuvering space

of 60 inches is steeper than 1:48 (2%).   (ii) This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) In his wheelchair, the Plaintiff encountered this steep slope in the entrance door maneuvering space, and due to this slope, he required assistance to enter the hotel.   (iv) The action required to make this required maneuvering space of 60 inches level is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR AND INTERIOR LOBBY AREA**

k.   (i) The force needed to open the main entrance door is about 12 pounds and greater than 5 pounds of force.   (ii) The force needed to open the main entrance door exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9. (iii)   Due to the force necessary to open this main entrance door, the Plaintiff required assistance to open this door and to enter the hotel.   (iv) The action required to reduce the force necessary to fully open this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) The counter throughout the lobby is about 48 inches above the floor and higher above the floor than 36 inches.   (ii) A portion of the counter that is a minimum of 36 inches long and a maximum of 36 inches high above the finish floor is not provided in the lobby, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) In his wheelchair, the Plaintiff encountered these high counters, and he could not access objects and paperwork on these counters.   (iv) The action required to provide an accessible counter is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN THE LOBBY**

m. (i) The lobby restroom does not have signage with the international symbol of accessibility.   (ii) The lobby restroom does not have signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it deters the Plaintiff from visiting the Quality Inn.   (iv) The action required to provide signage with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

n. (i) The rear wall grab bar in the lobby restroom is only about 24 inches long and less than the minimum of 36 inches long.   (ii) As shown in the photograph below, the rear wall grab bar in the lobby restroom is only about 24 inches long and less than the minimum required length of 36 inches, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to this short rear wall grab bar, the Plaintiff had great difficulty transferring himself from his wheelchair to sit on the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



o.   (i) In the lobby restroom, the side wall grab bar is only about 30 inches long and less than 42 inches long.  (ii) This side wall grab bar is less than 42 inches long (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.  (iii) Due to this short side wall grab bar, the Plaintiff had great difficulty using it to transfer himself from his wheelchair to sit on the toilet and to move from the toilet back to his wheelchair.  (iv) The action required to replace this side wall grab bar with a grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the lobby restroom, the side wall grab bar only extends about 33 inches from the rear wall and not a minimum of 54 inches from the rear wall.  (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.  (iii) Due to its lack of proper extension from the rear wall, the Plaintiff had great difficulty using this side wall grab bar to transfer himself

from his wheelchair to sit on the toilet and from the toilet back to his wheelchair.   (iv) The action required to replace and properly position this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the lobby restroom, the counter for the lavatory sink is higher than 34 inches above the floor.   (ii) The counter for the lavatory is higher than 34 inches (865 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 606.3.   (iii) The Plaintiff encountered this condition while using the sink.   (iv) The action required to lower the counter for the lavatory is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) As shown in the photograph below, the lavatory supply and drain pipes under the lavatory are not insulated.   (ii) The lavatory supply and drain pipes are not insulted, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) In his wheelchair, the Plaintiff encountered these uninsulated supply and drain pipes under this lavatory, and he risked skin burns and injury due to the lack of insulation.   (iv) The action required to insulate these supply and drain pipes under this lavatory is easily accomplishable and able to be carried out without much difficulty or expense.



s.    (i) In the lobby restroom, the centerline of the toilet paper dispenser is not between

7 inches and 9 inches from the front of the toilet or water closet.   (ii) This toilet paper

dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front

of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the

location of the toilet paper dispenser, the Plaintiff could not reach toilet paper from this

dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate

or replace this toilet paper dispenser is easily accomplishable and able to be carried out

without much difficulty or expense.

t.    (i) In the lobby restroom, the paper towel dispenser outlet is about 54 inches above

the floor and higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet

is higher than 48 inches (1220 mm) above the finish floor and outside the reach range of

an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii)

The Plaintiff tried could not reach this paper towel dispenser from his wheelchair.   (iv)

The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the lobby restroom, the bottom edge of the mirror's reflecting surface is about 46 inches above the floor and higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) From his wheelchair, the Plaintiff could not see his full face in this mirror due to the height of the mirror's reflecting surface above the floor.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) The light switches in the lobby restroom are not automatic and are higher than 48 inches above the floor.   (ii) These light switches are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) From his wheelchair, the Plaintiff tried but could not reach these light switches due to their height above the floor.   (iv) The action required to relocate these light switches is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the lobby restroom, the door knob requires tight grasping, pinching, or twisting of the wrist to operate.   (ii) To operate the door knob to the lobby restroom requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4 and 404.2.7.   (iii) The Plaintiff tried could not operate this door knob with a closed fist or loose grip.   (iv) The action required to replace this door knob is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) The clear width of space between the lavatory and the toilet is only about 19 inches.   (ii) A clear floor space of 30 by 48 inches is not provided, in violation of Federal

Law 2010, ADAAG §§ 305.7 and 606.2.   (iii)   The Plaintiff tried but could not make a forward approach in his wheelchair to use the lavatory.   (iv) The action required to relocate the lavatory to create clear floor space to allow a forward approach to the lavatory is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the lobby restroom, the liquid soap dispenser is mounted at about 57 inches above the floor and higher than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

z.   (i)   In the breakfast area, the coffee machine dispenser levers are about 52 inches above the floor and higher than 48 inches above the floor.   (ii) These coffee machine dispenser levers are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of these coffee machine dispenser levers able the floor, the Plaintiff tried but could not serve himself coffee while sitting in his wheelchair.   (iv) The action required to relocate or replace this coffee machine so that its levers are accessible to individuals in wheelchairs is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the breakfast area, the door handle to the mini-fridge is higher than 48 inches above the floor.   (ii) The door handle to this mini-fridge is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii)   From his wheelchair, the Plaintiff tried but could not reach the handle to this mini-fridge due to its height above the floor.   (iv) The action required to replace or relocate this mini-fridge or

its door and handle is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the breakfast area, the bread and muffin trays, food bowls, waffle cups, oil spray, the top compartment for jam, honey and syrup packets are all higher than 48 inches above the floor.   (ii) The items in subparagraph (i) are all higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2   (iii) The Plaintiff tried but could not reach the items in subparagraph (i) from his wheelchair.   (iv) The actions required to make these items accessible are easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the breakfast area, the juice machine dispenser keys are higher than 48 inches above the floor.   (ii) These juice machine dispenser keys are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach the juice dispenser keys to serve himself juice.   (iv) The action required to relocate or replace this juice machine dispenser or its dispenser keys is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 124**

dd.   (i) In accessible guestroom 124, the door lock on the entrance door to the room requires tight grasping, pinching, or twisting of the wrist.   (ii)   To operate this door lock requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 309.4.   (iii) The Plaintiff tried could not operate this lock with a closed fist or loose grip.   (iv) The action required to replace this lock is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In accessible guestroom 124, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 8 inches and less than the 18 inches.   (ii) The door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance, in his wheelchair, the Plaintiff required assistance to exit accessible guestroom 124.   (iv) The action required to increase this maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In accessible guestroom 124, the clear floor space between the bed and chair is less than 30 inches.   (ii) This clear floor space between the bed and chair is less than the minimum required clearance of 30 inches, in violation of Federal Law 2010, ADAAG § 305.   (iii) In his wheelchair, the Plaintiff was blocked from accessing the chair and the nightstand and from entering the bed on the chair side of the room, due to this lack of clear floor space between the bed and chair, which at the time of his stay was only about 18 inches.   (iv) The action required to increase this clear floor space between furniture in the room and to have a written policy in place to maintain the proper clear floor space in this accessible room is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In accessible guestroom 124, the coffee maker inlet is about 62 inches above the floor and higher than 48 inches above the floor.   (ii) This coffee maker inlet is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. (iii) Due to the height of the coffee maker inlet above the floor, from his wheelchair, the

Plaintiff could not make himself coffee.   (iv)   The action required to relocate this coffee maker is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In accessible guestroom 124, the iron handle is about 63 inches above the floor and higher than 48 inches above the floor.   (ii) This iron's handle is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the finish floor, the Plaintiff tried but could not reach this iron from his wheelchair.   (iv) The action required to relocate this iron is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In accessible guestroom 124, the shelf above the hangers for clothes is about 53 inches above the floor and higher than 48 inches above the floor.   (ii) This shelf above the hangers for clothes is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not place clothing items on this shelf due to its height above the floor. (iv) The action required to lower this shelf is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In accessible guestroom 124, the end of the drapery rod pulls closest to the floor is about 54 inches above the floor and higher than 48 inches above the floor.   (ii) The end of these drapery rod pulls are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach these drapery rod pulls to pull the curtains closed due to their height above the floor.   (iv) The action required to replace these drapery rod pulls is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In accessible guestroom 124, the security latch is about 52 inches above the floor and higher than 48 inches above the floor.   (ii) This security latch is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG 404.2.7.   (iii) From his wheelchair, the Plaintiff tried but could not close this security latch due to its height above the floor.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In accessible guestroom 124, the turning space width between the corner of the bed, the air conditioning unit and the desk is about 38 inches and less than 60 inches in diameter.   (ii) This turning space width is less than the minimum required diameter of 60 inches or a T-shaped turning space within a minimum of a 60 inch square, in violation of Federal law 2010, ADAAG §§ 304.3.1 or 304.3.2.   (iii)   The Plaintiff tried but could not enter and exit this space to use the controls for the air conditioner.   (iv) The action required to relocate the desk and bed is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBEL GUESTROOM 124**

mm.   (i) In the restroom in accessible guestroom 124, the clearance length parallel to the bathtub is only about 25 inches and is blocked by the toilet.   (ii) The clearance in front of this bathtub does not extend the length of the bathtub and is not a minimum of 30 inches (760 mm) wide, in violation of Federal Law 2010, ADAAG § 607.2   (iii) Due to this lack of clearance in front of the bathtub, the Plaintiff could not enter this bathtub without assistance.   (iv) The action required to provide clearance in front of this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the restroom in accessible guestroom 124, two grab bars are not provided

on the back wall of the bathtub.   (ii) For bathtubs such as this one without a permanent seat, the required two grab bars are not provided on the back wall of the bathtub, in violation of Federal Law 2010, ADAAG § 607.4.2.   (iii) Due to the lack of grab bars on the back wall of this bathtub, the Plaintiff required assistance to bathe.   (iv) The action required to install grab bars on the back wall of this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the restroom in accessible guestroom 124, there is no horizontal grab bar on the control end wall of the bathtub.   (ii) A horizontal grab bar is not installed on the control end wall of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.4.1.2 and 607.4.2.2.   (iii) Due to this lack of a horizontal grab bar on the control end wall of the bathtub, the Plaintiff required assistance to bathe in this bathtub and to operate the controls. (iv) The action required to install a horizontal grab bar on the control end wall of the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i) In the restroom of accessible guestroom 124, a grab bar is not installed on the head end wall at the front edge of the bathtub.   (ii) A grab bar is not installed on the head end wall at the front edge of the bathtub, in violation of Federal Law 2010, ADAAG § 607.4.2.3.   (iii) Due to this lack of a grab bar on the head end wall at the front edge of the bathtub, the Plaintiff required additional assistance to bathe in this bathtub.   (iv) The action required to install such a grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the restroom of accessible guestroom 124, the handle to the shower spray is located about 63 inches above the floor of the bathtub and higher than 48 inches above the

floor of the bathtub.   (ii) This shower spray handle is located higher than 48 inches above the floor of the bathtub, in violation of Federal Law 2010, ADAAG §§ 308.2 and 608.6. (iii) Due to the height of this shower spray handle above the floor of the bathtub, the Plaintiff could not reach this shower spray unit, and the Plaintiff required additional assistance to bathe.   (iv) The action required to relocate this shower spray unit and to have a written policy in place to locate it a maximum of 48 inches above the floor of the bathtub for new guests are easily accomplishable and are able to be carried out without much difficulty or expense.

rr.   (i) As shown in the photograph below, the lavatory supply and drain pipes under the lavatory in the restroom in guestroom 124 are not insulated.   (ii) These lavatory supply and drain pipes are not insulted, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) In his wheelchair, the Plaintiff encountered these uninsulated supply and drain pipes under this lavatory, and he risked skin burns and injury due to the lack of insulation.   (iv) The action required to insulate these supply and drain pipes under this lavatory is easily accomplishable and able to be carried out without much difficulty or expense.



ss.   (i) In the restroom in accessible guestroom 124, the stall width for the toilet is only about 31 inches and less than 60 inches wide.   (ii) The stall width for the toilet area is less than 60 inches, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) The Plaintiff encountered this lack of clear floor space and due to it, he required assistance to transfer from his wheelchair to the toilet.   (iv) The actions required to reconfigure the toilet area are easily accomplishable and able to be carried out without much difficulty or expense.

tt.   (i) In the restroom in accessible guestroom 124, the centerline of the toilet paper dispenser is located toward the back of the toilet and not between 7 inches and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between the minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to its location, the

Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

uu.   (i) In the restroom of accessible guestroom 124, the distance from the toilet centerline to the side wall is about 14.5 inches and not between 16 and 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.   (iii) This lack of space between the toilet and the side wall made it difficult for the Plaintiff to use the toilet.   (iv) The action required to relocate the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

vv.   (i) In the restroom in accessible guestroom 124, the light switch is higher than 48 inches above the floor.   (ii) This light switch is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not turn this light switch off.   (iv) The action required to relocate this light switch is easily accomplishable and able to be carried out without much difficulty or expense.

ww.      (i) In the restroom in accessible guestroom 124, the hairdryer handle is installed at about 61 inches above the floor and higher than 48 inches above the floor.   (ii) This hair dryer handle is installed higher than 48 inches above the floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this hair dryer from his wheelchair.   (iv) The action required to relocate this hair dryer is easily accomplishable and able to be carried out without much difficulty or expense.

xx.  (i) In the restroom in accessible guestroom 124, the towel shelf above the toilet is installed at about 53 inches above the floor and higher than 48 inches above the floor. (ii) This towel shelf is located higher than 48 inches above the floor, in violation of Federal Law 2010, ADAAG § 308.2.  (iii) Due to its height above the floor, the Plaintiff tried but could not reach the towels on this shelf from his wheelchair.  (iv) The action required to relocate this towel shelf is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL**

yy.  (i)  The force needed to open the door to the pool area is about 11 pounds and greater than 5 pounds.  (ii) The force necessary to open this door exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.  (iii) The Plaintiff required assistance to open this door.  (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

zz.  (i) The pool area does not have the signage and international symbol of accessibility.  (ii) The pool area does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 216.6 and 703.7.2.1.  (iii) The Plaintiff observed this lack of signage and symbol of accessibility, and it deters him from visiting Quality Inn.  (iv) The action required to install signage is easily accomplishable and able to b carried out without much difficulty or expense.

**VENDING AREA**

aaa.        (i)  The dollar bill inlet to the soda vending machine is higher than 48

inches above to the floor.   (ii) The dollar bill inlet to the soda machine is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of this inlet above the floor, the Plaintiff could not use this vending machine from his wheelchair.   (iv) The action required to lower the legs of this vending machine or to replace this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

bbb.        (i) The selection buttons on the snack vending machine are all about 54 inches and higher above the floor.   (ii) The selection buttons to the snack vending machine are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of the selection buttons on this snack vending machine, the Plaintiff could not use this vending machine from his wheelchair.

**HALLWAY**

ccc.        (i) The bottom edge of the mirror's reflecting surface in the hallway near the elevator in the second floor is about 49 inches above the floor and higher than 35 inches above the floor.     (ii) The bottom edge of this mirror's reflecting surface is higher than 35 inches above the finish floor, in violation of Federal law 2010, ADAAG § 60303.   (iii) From his wheelchair, the Plaintiff could not see his full face in this mirror due to the height of its reflecting surface above the floor.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.


26.        All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

27.     The discriminatory violations described in paragraph 25 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

28.      The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

29.      The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

30.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

31.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is

warranted.

32.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

33.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

34.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

35.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Quality Inn and adjacent parking lot spaces, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

36.   Millions of Americans require the use of a wheelchair for mobility.

37.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

38.   Removing existing architectural barriers to access under Title III of the ADA will be good for business at the Quality Inn.

**WHEREFORE,** Plaintiff respectfully requests:

a.   The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.   Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*